UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| TERREL LARUE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 18 C 932 |
| v. | ) | |
| | ) | Judge Rubén Castillo |
| DONALD MILLS, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Terrell Larue ("Plaintiff"), a prisoner at Stateville Correctional Center ("Stateville"), brings this action against the Illinois Department of Corrections ("IDOC"), IDOC Health Administrator Donald Mills ("Mills"), IDOC Director John R. Baldwin ("Baldwin"), Ghaliah Obaisi ("Obaisi") as executor of the estate of Dr. Saleh Obaisi, who was an IDOC medical doctor, former Stateville warden Randy Pfister ("Pfister"), current Stateville warden Walter Nicholson ("Nicholson"), and Wexford Health Sources, Inc. ("Wexford"), alleging claims under 42 U.S.C. § 1983 and Illinois law. (R. 1, Compl.; R. 14-1, Second Am. Compl.) Before the Court is Wexford and Obaisi's (collectively, "the Wexford Defendants") motion to dismiss (R. 31, Wexford Defs.' Mot.) and Nicholson, Mills, Baldwin, and IDOC's (collectively, "the IDOC Defendants") motion to dismiss. (R. 37, IDOC Defs.' Mot.) For the following reasons, both motions are granted.

### BACKGROUND

Plaintiff is a prisoner at Stateville. (R. 14-1, Second Am. Compl. ¶ 15.) Since at least 2015, he complained to numerous medical professionals and administrators of pain and a bulge in his left testicle. (*Id.*) Over time, his pain intensified and, as a result, he began to have trouble

1

walking, standing, sleeping, and breathing. (*Id.* ¶ 16.) In October and November 2017, Plaintiff filed two grievance reports, complaining of his worsening condition and about how his requests for medical attention since 2015 had been ignored. (*Id.* ¶¶ 17-19.)

In November 2017, Plaintiff was examined by Dr. Saleh Obaisi, who diagnosed Plaintiff with a hernia and told him that he would be sent for surgery. (*Id.* ¶19.) He was seen again by Dr. Obaisi later that month because his pain had intensified. (*Id.* ¶ 20.) Dr. Obaisi told Plaintiff that he would be sent for surgery soon. (*Id.*) Thereafter, Plaintiff's pain continued to worsen and he continued complaining to nurses and correctional officers regarding his condition. (*Id.* ¶¶ 21, 24.) Plaintiff requested to see Mills, who informed him that he would look into it and let him know when the surgery would take place. (*Id.* ¶ 23.) He also wrote letters to Pfister, who was the warden at the time, but he never received any response. (*Id.* ¶ 24.) Plaintiff was sent for surgery on July 10, 2018, roughly eight months after his first visit with Dr. Obaisi. (*Id.* ¶ 25.) Plaintiff complains of the delay in obtaining the surgery and of the pain he suffered as a result. (*Id.* ¶ 26.) He brings a Section 1983 claim for deliberate indifference to his serious medical needs in violation of the Eighth Amendment against all defendants, a negligence claim against all defendants, and a breach of contract claim against IDOC and Wexford. (*Id.* ¶¶ 27-57.)

## PROCEDURAL HISTORY

Plaintiff filed a *pro se* complaint against Defendants on February 2, 2018. (R. 1, Compl.) Counsel was appointed on May 25, 2018, and Plaintiff thereafter filed a first amended complaint. (R. 11, First Am. Compl.) Several months later, Plaintiff sought leave to file a second amended complaint, incorporating additional facts. (R. 14, Mot. Second Am. Compl.) Plaintiff properly attached his proposed second amended complaint to his motion. (R. 14-1, Second Am. Compl.) Although leave was granted to file the second amended complaint (R. 22, Min. Order), Plaintiff

2

did not subsequently separately file it. The Court nevertheless considers the second amended complaint attached to the motion as the operative complaint.

On February 8, 2019, the Wexford Defendants moved to dismiss Plaintiff's first amended complaint in part despite that by then it had been superseded by the second amended one. (R. 31, Wexford Defs.' Mot. at 1.) On March 1, 2019, Plaintiff responded in opposition, without noting the oversight. (R. 36, Resp. Wexford Defs.' Mot.) The Wexford Defendants filed a reply on March 15, 2019. (R. 40, Reply.) On the same day, the IDOC Defendants also moved to dismiss the first amended complaint. (R. 37, IDOC Defs.' Mot.) Plaintiff responded in opposition on April 17, 2019 (R. 43, Pl.'s Resp. IDOC's Mot.), and the IDOC Defendants filed their reply on May 1, 2019. (R. 45, IDOC Defs.' Reply.) Because the parties fully briefed the motions, and the allegations of the second amended complaint do not vary from the allegations of the earlier one in a way that affects this Court's analysis on the motions, the Court construes them as if they had been directed against the operative complaint.

## LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) (internal quotation omitted). In order to survive a motion to dismiss under Rule 12(b)(6), the complaint must allege enough factual information to state a claim to relief that is plausible on its face. *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 914 (7th Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

When reviewing a 12(b)(6) motion, the Court accepts all well-pled facts as true and views them in the light most favorable to the plaintiff. *Camasta v. Jos A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). However, mere conclusory statements are insufficient to survive a motion to dismiss, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015) (internal quotation omitted).

## ANALYSIS

### I. Section 1983 Claim (Count I)

#### A. IDOC

The IDOC Defendants move to dismiss Plaintiff's Section 1983 claim against IDOC on Eleventh Amendment immunity grounds and because it is not a "person" subject to suit under Section 1983. (R. 37, IDOC Defs.' Mot. at 3.) Plaintiff does not oppose the motion, and accordingly waives the claim (R. 43, Pl.'s Resp. IDOC Defs.' Mot.). *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("We apply [the waiver/forfeiture rule] where a party fails to develop arguments related to a discrete issue, and we also apply that rule where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss."); *accord Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053-54 (7th Cir. 2019). In any event, this Court agrees that IDOC is not subject to suit under Section 1983, and therefore dismisses the claim against it. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (disallowing suit against state and its officials acting in their official capacity because neither are "persons" under 42 U.S.C. § 1983); *Pennhurst State Sch. & Hosp. v. Halderman*, 465

4

U.S. 89, 100-01 (1984) (in absence of consent, suit against state or its agencies or departments is barred by Eleventh Amendment).

### B. Nicholson and Baldwin

The IDOC Defendants also move to dismiss Plaintiff's Section 1983 claim against Nicholson and Baldwin on the basis that Plaintiff fails to allege that either were personally involved in his course of medical care or otherwise made aware of it. (R. 37, IDOC Defs.' Mot. at 3.) Plaintiff opposes the motion, arguing that he sufficiently supports his claim with allegations that he made a series of formal and informal complaints over a two-year period during which Nicholson was Stateville's warden and Baldwin was IDOC's director. (R. 43, Pl.'s Resp. Defs.' Mot. at 2-3.)

It is well settled that Section 1983 liability is "premised on the wrongdoer's personal responsibility." *Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012). "[I]n order to hold an individual defendant liable under § 1983 for a violation of an inmate's constitutional rights, the inmate must show that the defendant was personally responsible for that violation." *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017), *reh'g denied* (May 5, 2017). "A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Id.* (internal quotation omitted). Although an official cannot be personally liable for a section 1983 claim "under a theory of *respondeat superior*," he can be held personally responsible if he knew about the conduct that caused the constitutional violation and "facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (quoting *Jones v. City of Chi.*, 856 F.2d 985, 992 (7th Cir. 1988)); *accord Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011).

5

Under these authorities, Plaintiff's allegations as to Nicholson and Baldwin fail to state a claim. Holding a supervisory role at the prison alone cannot support the claim, and Plaintiff fails to allege any knowledge of or participation in the series of events about which Plaintiff complains. *Gentry*, 65 F.3d at 561. Without any allegation that Plaintiff complained to either defendant about his perceived delay in obtaining medical care or that either defendant was otherwise made aware of his complaints, he fails to allege any basis upon which either could be personally liable. Accordingly, the Section 1983 claim against Nicholson and Baldwin is dismissed without prejudice to its potential reassertion after further discovery.

## II.   Negligence (Count II)

### A.   The IDOC Defendants

According to the IDOC Defendants, Plaintiff's negligence claim should be dismissed against Nicholson, Baldwin, and Mills because they are entitled to sovereign immunity under Illinois law. (R. 37, IDOC Defs.' Mot. at 4-5 (citing among others 745 ILL. COMP. STAT. § 5/1).) Plaintiff opposes the motion as to Nicholson, Baldwin, and Mills on the basis that his claims are not official capacity claims, but individual ones, for which he says sovereign immunity does not apply. (R. 43, Pl.'s Resp. Defs.' Mot. at 2-3 (citing *Bullock v. Barham*, 957 F. Supp. 154, 156 (N.D. Ill. March 12, 1997)).) The distinction Plaintiff makes, however, speaks to Eleventh Amendment immunity, not to immunity under Illinois law. *See Bullock*, 957 F. Supp. at 156.

As the IDOC Defendants correctly observe, under Illinois law, IDOC, as a state agency, is immune from suit except as provided in certain inapplicable circumstances. 745 ILL. COMP. STAT. § 5/1. Similarly, Nicholson, Baldwin, and Mills are also entitled to sovereign immunity under Illinois law because the claims against them are effectively claims against Illinois. *Currie v. Lao*, 592 N.E.2d 977, 979-80 (Ill. 1992). Under Illinois law, a claim is considered one against

6

the state for sovereign immunity purposes where "there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State, then the cause of action is only nominally against the employee." *Healy v. Vaupel*, 599 N.E.2d 1240, 1247 (Ill. App. Ct. 1990) (internal quotation omitted). Here, Plaintiff does not allege that either Nicholson, Baldwin, or Mills acted outside of the scope of their authority, and the sole source of the duty they are alleged to have breached—the provision of medical care—is based on their employment with the state. (R. 14-1, Second Am. Compl. ¶¶ 7, 10, 11, 22-23.) Likewise, the actions of which Plaintiff complains involve matters that are ordinarily within their normal professional functions as IDOC employees. *Healy*, 549 N.E.2d at 1247. Accordingly, Plaintiff's negligence claim is dismissed against the IDOC Defendants.

### B. The Wexford Defendants

The Wexford Defendants move to dismiss Plaintiff's negligence claim for failure to attach an affidavit and physician's report attesting that the claim has merit in accordance with 735 ILL. COMP. STAT. § 5/2-622 ("Section 2-622"). (R. 31, Wexford Defs.' Mot. at 3-5.) According to Defendants, because Plaintiff's claim is premised on allegations of inadequate medical care, it amounts to one for medical negligence and must be accompanied by the requisite certification. (*Id.*) Plaintiff opposes the motion, arguing that his claim is one for ordinary—not medical—negligence because the deviation from the standard of care he alleges is "so obvious that anyone could have determined that Plaintiff required medical treatment." (R. 36, Pl's Resp. Wexford Defs.' Mot. at 2.) According to Plaintiff, because his claim is not focused on the

adequacy of his medical care, but rather on the delay in obtaining it, the statutory requirements of Section 2-622 do not apply. (*Id.* at 3.)

Whether a claim requires a Section 2-622 report depends on whether the claim is one "in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice." *Woodard v. Krans*, 600 N.E.2d 477, 486 (Ill. App. Ct. 1992) (quoting 735 ILL. COMP. STAT. § 5/2-622). In making this determination, Illinois courts consider: (1) whether the standard of care involves procedures not within the grasp of the ordinary lay juror, (2) whether the activity is inherently one of medical judgment, and (3) the type of evidence that will be necessary to establish the plaintiff's case. *Williams v. Athletico, Ltd.*, 74 N.E.3d 1047, 1054 (Ill. App. Ct. 2017). Illinois courts identify three types of negligence suits that are typically directed at medical providers, and only the third of these is exempted from the requirements of Section 2-622. *Woodard*, 600 N.E.2d at 487-88. These types of suits are: "(1) malpractice suits requiring expert testimony; (2) malpractice cases not requiring expert testimony; and (3) negligence suits, essentially common-law in character, that happen to be directed against health care providers." *Id.* The type of case against a health care provider that does not require a Section 2-622 report is "an exceptional one." *Id.* at 488.

Here, Plaintiff alleges that Defendants breached their duty of care by failing to properly monitor his condition, not adequately questioning him about his symptoms, not adequately examining him in a reasonable time, ignoring information he provided, not providing follow-up care or investigation into his symptoms or possible surgery, not referring him to a surgeon, not managing his pain, and failing to oversee and supervise the provision of health care at Stateville. (R. 14-1, Second Am. Compl. ¶ 39.) He alleges that Defendants knew of his condition, failed to meet their obligations to provide him appropriate healthcare, and knew or should have known

8

that their actions would result in a foreseeable risk of harm to him. (*Id.* ¶¶ 40, 45-46.) He adds that as a result of Defendants' inaction despite his pleas for treatment, he suffered continuous pain, and had difficulty walking, sleeping, and performing daily tasks. (*Id.* ¶ 47.)

From these allegations the Court readily concludes that Plaintiff's claim is one of medical, not ordinary, negligence. Plaintiff's argument notwithstanding, his claim is not like the one in *Thomas ex rel. Smith v. Cook County Sheriff*, 401 F. Supp. 2d 867 (N.D. Ill. 2005), where the plaintiff was alleged to be so obviously seriously ill with flu-like symptoms that anyone would have observed he needed urgent medical attention. Instead, Plaintiff complains of the decisions made in obtaining and acting on information from Plaintiff, determining Plaintiff's course of treatment, and otherwise overseeing the provision of his medical care for hernia and pain management. (R. 14-1, Second Am. Compl. ¶¶ 39-47.) Whether an eight-month period from Plaintiff's diagnosis to his surgery was reasonable is not something within the grasp of an ordinary lay juror. *Williams*, 74 N.E.3d at 1055. Similarly, whether the Wexford Defendants acted negligently in their provision of or failure to provide treatment requires an assessment of the severity of Plaintiff's condition and the proper treatment for it, both of which are inherently matters of medical judgment. *Id.* Finally, because Plaintiff's claim turns on the failure to provide adequate medical care, it appears he will need to establish that Defendants "failed to employ the degree of knowledge, skill, and ability that a reasonable [medical professional] would employ under similar circumstances," which will involve calling upon an expert. *Id.* Plaintiff's claim is therefore subject to the requirements of Section 2-622.

Under the Illinois statute, failure to abide by Section 2-622's requirements "shall be grounds for dismissal[.]" 735 ILL. COMP. STAT. § 5/2-622(g). While dismissal is mandatory, courts have discretion to dismiss with or without leave to amend. *Sherrod v. Lingle*, 223 F.3d

605, 613 (7th Cir. 2000). "Amendments to pleadings are to be liberally allowed to enable medical malpractice actions to be decided on their merits rather than on procedural technicalities. The test is the furtherance of the ends of justice." *Fox v. Gauto*, 995 N.E.2d 1026, 1031 (Ill. App. Ct. 2013) (internal quotation omitted). Accordingly, the claim is dismissed against the Wexford Defendants, and Plaintiff is given forty-five days from the date of this order to file an amended complaint which properly asserts this claim.

### III.   Breach of Contract (Count III)

Plaintiff alleges that Wexford breached its duty under its contract with IDOC to ensure that all inmates received adequate medical care when it failed to timely provide services to him. (R. 14-1, Second Am. Compl. ¶ 53-54.) According to Plaintiff, given the nature of the contract between IDOC and Wexford (the "IDOC Contract"), he is a third-party beneficiary of it under Illinois law. (*Id.*) The Wexford Defendants dispute Plaintiff's characterization, and accordingly move to dismiss the claim for lack of standing. (R. 31, Wexford Defs.' Mot. at 3.) The IDOC Defendants subsequently also moved to dismiss the claim, incorporating the Wexford Defendants' arguments, and asserting both Eleventh Amendment immunity and that the State Lawsuit Immunity Act, 745 ILL. COMP. STAT. 5/1, prohibits the claim unless it is brought in the Illinois Court of Claims. (R. 37, IDOC Defs.' Mot. at 6.) Plaintiff incorporates his previously asserted standing argument in opposition, but fails to respond to IDOC's other arguments. (R. 43, Pl.'s Resp. IDOC Defs.' Mot. at 3-5.)

According to Defendants, the IDOC Contract expressly rejects any assertion that it gives rise to third-party beneficiaries. (R. 31, Wexford Defs.' Mot. at 6-7; R. 37, IDOC Defs.' Mot. at 6.) They attach an excerpt of the contract to their motion. (R. 31, Wexford Defs.' Mot., Ex. 1, IDOC Contract Excerpt.) As Defendants see it, therefore, any benefits Plaintiff obtains under the

10

IDOC Contract are incidental, and do not give him standing to sue. (R. 31, Wexford Defs.' Mot. at 8.) Plaintiff argues in opposition that by filing only an excerpt of the contract, Defendants have not demonstrated that the provision they cite is unambiguous and enforceable. (R. 36, Pl.'s Resp. Wexford Defs.' Mot. at 4.) Defendants reply by filing the entire contract, maintaining it is not ambiguous, and insisting that its express declaration of the parties' intent controls. (R. 40, Wexford Defs.' Reply at 4; R. 40-1, Ex. 1, IDOC Contract.)

Illinois law recognizes two types of third-party beneficiaries, intended and incidental. *Carlson v. Rehab. Inst. of Chi.*, 50 N.E.3d 1250, 1256 (Ill. App. Ct. 2016). Unlike an incidental beneficiary, who has no rights under a contract, "[a]n intended beneficiary is intended by the parties to the contract to directly benefit for the performance of the agreement; under the contract an intended beneficiary has rights and may sue." *Id.* Express language in the contract identifying the third-party beneficiary is the best evidence of intent to benefit that party, but an implied showing may be made where the implication that the contract applies to third parties is so strong as to be practically an express declaration. *Quinn v. McGraw-Hill Cos.*, 168 F.3d 331, 334 (7th Cir. 1999) (construing Illinois law). "[T]here is a strong presumption against creating rights in a third-party beneficiary. To overcome this presumption, the intent to benefit a third party must affirmatively appear from the language of the contract and the circumstances surrounding the parties at the time of execution." *Wallace v. Chi. Housing Auth.*, 298 F. Supp. 2d 710, 724 (N.D. Ill. 2003) (applying Illinois law).

The Court notes at the outset that it may consider the IDOC contract without converting the motion to dismiss to one for summary judgment because Plaintiff's complaint referred to and rests on it. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) ("It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider documents attached to

a motion to dismiss if they are referred to in the plaintiff's complaint and are central to his claim." (internal quotation and alteration omitted.)). Paragraph 4.24 of the IDOC Contract provides, "The Parties do not intend to create in any other individual or entity, offender or patient, the status of third party beneficiary, and this Contract shall not be construed as to create such status." (R. 31, Wexford Defs.' Mot. at Ex. 1; R. 40-1, Wexford Defs.' Reply at Ex. 1.) By its plain terms then, the IDOC Contract rejects an intent to benefit anyone other than its parties. *Flournoy v. Ghosh*, No. 07 C 5297, 2010 WL 1710807, at *2-3 (N.D. Ill. Apr. 27, 2010) (rejecting similar argument and finding IDOC-inmate plaintiff was only incidental beneficiary under contract). Clear and unambiguous contracts must be enforced as written, and the "meaning of the contract, as well as the intention of the parties must be gathered from the document without the assistance of extrinsic aids." *Motorola Sols., Inc. v. Zurich Ins. Co.*, 33 N.E.3d 917, 941 (Ill. App. Ct. 2015).

Nor has Plaintiff pointed to any other facts or circumstances challenging the enforceability of the cited provision or strongly suggesting that IDOC or Wexford intended to benefit Plaintiff so "as to be practically an express declaration." *Quinn*, 168 F.3d at 334. Because the IDOC contract plainly and unambiguously disavows the existence of third-party beneficiaries, and Plaintiff fails to otherwise support his asserted third-party beneficiary status, Plaintiff lacks standing to bring the contract claim he asserts. *Carlson*, 50 N.E.3d at 1254; *Flournoy*, 2010 WL 1710807, at *2-3. Accordingly, Defendants' motions to dismiss the breach of contract claim are granted without reaching their additional arguments.

## CONCLUSION

For the foregoing reasons, the Wexford Defendants' motion to dismiss (R. 31, Wexford Defs.' Mot.) and the IDOC Defendants' motion to dismiss are GRANTED. (R. 37, IDOC Defs.'

Mot.) Plaintiff's Section 1983 claim (Count I) is DISMISSED with prejudice against IDOC, and without prejudice as to Nicholson and Baldwin. Plaintiff's breach of contract claim against all defendants and his negligence claim against the IDOC Defendants are DISMISSED with prejudice. Plaintiff's negligence claim against the Wexford Defendants is DISMISSED without prejudice. Plaintiff is granted forty-five days leave from the date of this order to file an amended complaint consistent with this opinion. A status hearing is set for September 18, 2019, at 9:45 a.m. The parties are DIRECTED to exhaust all settlement possibilities prior to the status hearing.

ENTERED:

Judge Ruben Castillo
United States District Court

**Dated: July 15, 2019**